Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMART STUDY CO., LTD., <br><br> *Plaintiff* <br><br> v. <br><br> ADEALS, AIBEIHOUSEHOLD, AIR11, AKYE002, ANT688, B2B_BABY, B2B_BAGS, BEST_SPORTS, BETTERBUY, CFUN7915, CHINESEFACTORY10, COVER3085, EDDOESZS, EGOMALL, EXCUSA, FASHION_HOUSE, FASHION_LINGIRE, FLF719, FORMALDRESS, FORTNITE2018, FULLGOODS, GANLU1992, GAYLORD, GOODBABYSMILE1979, GOODGOODS_2013, GOODGOODS_2015, GOOD_HOME, GREATAMY, GREATWALL9999, HAPPYSEASON, HONEYSETS, HUANGLINZI, INTERBABY, JADE_FANTASY, JENNYTOY, JIAYANBABY, JINGJINGLIANG_NO4, JUXU, KIDS_DRESS, KIDS_SHOW, LEILAR, LIANGJINGJING_KITCHE, LIANGJINGJING_NO1, LIANGJINGJING_NO3, LIANGJINGJING_WATCH, LOL_DOLL, MADDEN, MAYES, MIRACLEHAPPENS, MOTHERSHOPPING, MRKZXSHOP, MR_CARS, NB_SPORT, PARADISE02, POTALA, POTALA_CHEERING, POWERBALANCE, RINO, | **CIVIL ACTION No. ___** <br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

ROSE_LIU, SHUAIJINJIN_CHINA, SPORT_NO1,
START_BABY,             SURPRISE_SHOP,
SWEET_FACTORY,             SWEET_SHOPS,
TAROCHEN,       TEEM,     TOP_DHSELLER,
TOP_TOY,    TUONIU,    VIPKID,    VIP_KID,
WONDERFULWATCH,     WORLDJOY    and
ZAKITOYS,

*Defendants*

# GLOSSARY

| Term | Definition |
| --- | --- |
| **Plaintiff or "Smart"** | Smart Study Co., Ltd. |
| **Defendants** | adeals, aibeihousehold, air11, akye002, ant688, b2b_baby, b2b_bags, best_sports, betterbuy, cfun7915, chinesefactory10, cover3085, eddoeszs, Egomall, excusa, fashion_house, fashion_lingire, flf719, formaldress, fortnite2018, fullgoods, Ganlu1992, gaylord, goodbabysmile1979, goodgoods_2013, goodgoods_2015, good_home, greatamy, greatwall9999, happyseason, honeysets, huanglinzi, interbaby, jade_fantasy, jennytoy, jiayanbaby, jingjingliang_no4, juxu, kids_dress, kids_show, leilar, liangjingjing_kitche, liangjingjing_no1, liangjingjing_no3, liangjingjing_watch, lol_doll, madden, mayes, miraclehappens, mothershopping, mrkzxshop, mr_cars, nb_sport, paradise02, potala, potala_cheering, powerbalance, rino, rose_liu, shuaijinjin_china, sport_no1, start_baby, surprise_shop, sweet_factory, sweet_shops, tarochen, teem, top_dhseller, top_toy, Tuoniu, vipkid, vip_kid, wonderfulwatch, worldjoy and zakitoys |
| **DHgate** | Dunhuang Group d/b/a DHgate.com, an online marketplace and e-commerce platform which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York. |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **NAL** | New Alchemy Limited, a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling counterfeit products on online marketplace platforms |
| **New York Addresses** | 20 Cooper Sq. New York, NY 10003; 1685 Bicetown Road, New York, NY 10016; 752 Lafayette Ave, Brooklyn, New York, NY 11221; 189 Bayport St., New York, NY 10028 |
| **Complaint** | Plaintiff's Complaint filed on August 15, 2019 |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets |

| | |
|---|---|
| | (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on August 15, 2019 |
| **Kang Dec.** | Declaration of You Jae Kang in Support of Plaintiff's Application |
| **Arnaiz Dec.** | Declaration of Jessica Arnaiz in Support of Plaintiff's Application |
| **Scully Dec.** | Declaration of Brieanne Scully in Support of Plaintiff's Application |
| **Baby Shark Content** | One of Smart's most successful creations, which is the Pinkfong "Baby Shark" song and viral music video with characters |
| **Baby Shark Applications** | U.S. Trademark Serial Application No. 79/253,035 for a variety of goods in Classes 41, 25, 16 and 9; **pinkfong Baby Shark**, which is covered by U.S. Trademark Serial Application No. 88/046,099 for a variety of goods in Class 28; **pinkfong**, which is covered by U.S. Trademark Serial Application No. 79/252,869 for a variety of goods in Class 41; "PINKFONG BABY SHARK", which is covered by U.S. Trademark Serial Application No. 79/249,403 for a variety of goods in Classes 24 and 21; and "PINKFONG BABY SHARK", which is covered by U.S. Trademark Serial Application No. 88/396,786 for a variety of goods in Class 25 |
| **Baby Shark Registrations** | U.S. Trademark Registrations: No. 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; No. 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; No. 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; and No. 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25 |
| **Baby Shark Marks** | The Baby Shark Registrations and Baby Shark Applications |
| **Baby Shark Works** | U.S. Copyright Registrations: No. VA 2-130-856, covering Baby Shark; No. 2-130-847, covering Daddy Shark; No. VA 2-130-854, covering Mommy Shark; No. VA 2-131-983, covering Pink Fong Mascot; No. SR 823-609, covering Baby Shark (Sound Recording and Music); No. PA 2-142-905, covering Baby Shark (Motion Picture) |
| **Baby Shark Products** | Smart has developed and initiated an extensive |

iv

|  | worldwide licensing program for a wide variety of consumer products such as toys, sound books, t-shirts, associated with and/or related to the Baby Shark Content |
|---|---|
| **Counterfeit Products** | Products bearing or used in connection with the Baby Shark Marks and/or Baby Shark Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baby Shark Marks and/or Baby Shark Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works and/or products that are identical or confusingly or substantially similar to the Baby Shark Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as DHgate, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any and all banks, financial institutions, credit card companies and payment processing agencies, such as DHgate (*e.g.*, DHpay.com), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |

| Third Party Service Providers | Online platforms, including, without limitation, those owned and operated, directly or indirectly by DHgate, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|---|---|

Plaintiff by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.     This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); trademark infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims, arising from the infringement of the Baby Shark Marks and Baby Shark Works, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Baby Shark Products by Defendants.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as DHgate as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using

2

their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

      c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

      d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

      e.    Upon information and belief, Defendants are aware of Plaintiff, its Baby Shark Products, Baby Shark Content, Baby Shark Marks and Baby Shark Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.    Plaintiff is a South Korean corporation with a principal place of business at 94, Myeongdal-ro, Seocho-gu, Seoul, Republic of Korea, South, 06668.

6.    Upon information and belief, Defendants are merchants on the DHgate online marketplace platform, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the printouts of screenshots of Defendants' Merchant Storefronts in **Exhibit D**.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Baby Shark Content and Baby Shark Products

7.     Plaintiff is a global entertainment company specializing in developing animated and gaming content to deliver high-quality entertainment. Headquartered in Seoul, South Korea, Plaintiff currently has 220 employees and offices in Los Angeles, Shanghai and Hong Kong. Smart has developed award-winning brands including "Pinkfong", "Monster Super League", "JellyKing" and "Tamago Monsters".

8.     Through Plaintiff's preschool brand, Pinkfong, the company produces modern-day songs and stories to provide stimulating and fun learning experiences to children. One of Plaintiff's most successful creations is the Pinkfong "Baby Shark" song and viral music video with characters, which to date has amassed nearly 3.1 billion views on YouTube and debuted at No. 32 on the Billboard Hot 100 Chart.

9.     Plaintiff has developed and initiated an extensive worldwide licensing program for a wide variety of consumer products such as toys, sound books and t-shirts associated with and/or related to the BABY SHARK and PINKFONG trademarks and the Baby Shark Content. Examples of the Baby Shark Products are attached hereto as **Exhibit A** and incorporated herein by reference.

10.    Plaintiff sells its Baby Shark Products through its online shops accessible through the PINKFONG website at https://www.pinkfong.com/en/, to a number of countries, including but not limited to, United States, Greece, Malaysia, Singapore, Portugal, etc. In the United States, Plaintiff sells its Baby Shark Products throughout major retailers and online marketplaces, including, but not limited to Walmart, Target and Amazon.

11.    The Baby Shark Products retail from $16.99 (t-shirts) to $49.99 (sound toys).

12.     While Plaintiff has gained significant common law trademark and other rights in its Baby Shark Content and Baby Shark Products, through use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark registrations.

13.     Plaintiff is the owner of U.S. Trademark Registrations: No. 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; No. 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; No. 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; and No. 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25. Additionally, Plaintiff has applied for registration of "BABY SHARK", which is covered by U.S. Trademark Serial Application No. 79/253,035 for a variety of goods in Classes 41, 25, 16 and 9; **pinkfong Baby Shark**, which is covered by U.S. Trademark Serial Application No. 88/046,099 for a variety of goods in Class 28; **pinkfong**, which is covered by U.S. Trademark Serial Application No. 79/252,869 for a variety of goods in Class 41; "PINKFONG BABY SHARK", which is covered by U.S. Trademark Serial Application No. 79/249,403 for a variety of goods in Classes 24 and 21; and "PINKFONG BABY SHARK", which is covered by U.S. Trademark Serial Application No. 88/396,786 for a variety of goods in Class 25. True and correct copies of the registration certificates and applications for the Baby Shark Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

14.     The Baby Shark Marks are currently in use in commerce in connection with the Baby Shark Content and Baby Shark Products. The Baby Shark Marks were first used in commerce on or before the date of first use as reflected in the registrations and applications attached hereto as Exhibit B.

15.     In addition, Plaintiff also owns both registered and unregistered copyrights related to

5

the Baby Shark Content and Baby Shark Products.

16.    Plaintiff is the owner of U.S. Copyright Registrations: No. VA 2-130-856, covering Baby Shark; No. 2-130-847, covering Daddy Shark; No. VA 2-130-854, covering Mommy Shark; No. VA 2-131-983, covering Pink Fong Mascot; No. SR 823-609, covering Baby Shark (Sound Recording and Music); No. PA 2-142-905, covering Baby Shark (Motion Picture). True and correct copies of the U.S. Copyright registration certificates for the Baby Shark Works are attached hereto as **Exhibit C** and incorporated herein by reference.

17.    The success of the Baby Shark Products is due in large part to Plaintiff's marketing, promotion and distribution efforts. These efforts include, but are not limited to, the advertising and promotion of the Baby Shark Products through the product catalogue on Smart's Website, print and internet-based advertising and publicity for the Baby Shark Products, and placement of the Baby Shark Products at dozens of authorized major retail outlets.

18.    Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in the Baby Shark Content, Baby Shark Products, Baby Shark Marks and Baby Shark Works.

19.    Plaintiff's success is also due to its use of the highest quality materials and processes in making the Baby Shark Products.

20.    Additionally, Plaintiff owes a substantial amount of the success of the Baby Shark Content and Baby Shark Products to its consumers, and word of mouth buzz that its consumers have generated, particularly via social media.

21.    As a result of Plaintiff's efforts, the quality of Plaintiff's products and the word-of-mouth buzz generated by its consumers, the Baby Shark Marks, Baby Shark Works, Baby Shark

Products and Baby Shark Content have become prominently placed in the minds of the public. Members of the public have become familiar with the Baby Shark Marks, Baby Shark Works, Baby Shark Products and Baby Shark Content and have come to associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.

22.    Plaintiff has gone through great lengths to protect its interests to the Baby Shark Marks, Baby Shark Works, Baby Shark Products and Baby Shark Content. No one other than Plaintiff is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Baby Shark Marks and Baby Shark Works without the express permission of Plaintiff.

### DHgate and Defendants' User Accounts

23.    DHgate is an online marketplace and e-commerce platform which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

24.    As one of the leaders of the worldwide e-commerce and digital retail market, DHgate has generated billions in sales worldwide.[2] International buyers, including those in the U.S., make up a significant percentage of the business done on DHgate. For example, DHgate offers 25 million consumer products from 1.2 million suppliers for sale on its platform and attributes over half of its sales to U.S. buyers alone.[3]

---

[2] *See* Hamlet Chen, *The Secret of DHgate's Success,* LINKEDIN, (Feb. 11, 2018), https://www.linkedin.com/pulse/secret-dhgates-success-hamlet-chen.
[3] *See* Nona Tepper, *U.S. buyers account for half the sales on Hong Kong-based wholesale site DHgate.com,* DIGITALCOMMERCE360, (Jun. 22, 2015), https://www.internetretailer.com/2015/06/22/us-buyers-account-half-sales-dhgatecom.

25.     As recently addressed in news reports, and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on DHgate,[4] 85% of the world's counterfeit goods originate from China.  The rise of Chinese e-commerce platforms, including DHgate, have greatly increased consumers' access to counterfeit goods.[5]

26.     The Office of the United States Trade Representative ("USTR") publishes an annual "Notorious Markets List," which highlights specific physical and online markets around the world that are reported to be engaging in and facilitating substantial copyright piracy and trademark counterfeiting and which is intended to help the U.S. and foreign governments prioritize intellectual property rights enforcement that protects job-supporting innovation and creativity in the U.S. and around the world.[6]  In January 2018, the USTR released the results of its Special 301 Out-of-Cycle Review of Notorious Markets for 2017 and it named DHgate as a "particularly infamous Notorious Market."[7]  With more than 33 million product listings originating from China available for purchase to consumers overseas, rights holders have consistently reported challenges with the counterfeit goods available on DHgate.[8]

27.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on DHgate as well as potentially yet undiscovered additional online marketplace platforms.

---

[4] See, e.g., Can't Live Without It, Inc. v. Shanghai2008 (HK) Trading Limited, et al., No. 16-cv-9520 (LAK), (S.D.N.Y. Dec. 12, 2016) and Yeti Coolers, LLC v. Dunhuang Group, et al., No. 17-cv-938 (PAC), (W.D. Tex. Sept. 8, 2017).
[5] See David Pierson, No brand is too small for counterfeits, THE MORNING CALL (Jan. 19, 2018), http://www.mcall.com/business/retail/mc-biz-small-counterfeiters-20180116-story.html.
[6] See OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, 2017 OUT-OF-CYCLE REVIEW OF NOTORIOUS MARKETS (2018), available at https://ustr.gov/sites/default/files/files/Press/Reports/2017%20Notorious%20Markets%20List%201.11.18.pdf.
[7] Id.
[8] Id.

28.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

29.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

30.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

### Defendants' Wrongful and Infringing Conduct

31.     Particularly in light of Plaintiff's success with its Baby Shark Content and Baby Shark Products, as well as the reputation they have gained, Plaintiff and its Baby Shark Content and Baby Shark Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Baby Shark Content, Baby Shark Products, Baby Shark Marks and Baby Shark Works and Plaintiff investigates and enforces against such activities.

32.     As part of these efforts, Plaintiff retained NAL to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on DHgate.

33.     Through NAL's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York,

through Defendants' User Accounts and Merchant Storefronts. Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference.

34.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Baby Shark Products or to use the Baby Shark Marks and/or Baby Shark Works, or any marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and Baby Shark Works.

35.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Baby Shark Products, only with minor variations that no ordinary consumer would recognize.

36.     During its investigation, NAL identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit D**.

37.     NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through various payment processing services and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit D**.

38.     For example, below on the left is an image of one of Plaintiff's Baby Shark Products.

Depicted further below is a listing for Defendant aibeihousehold's Counterfeit Product ("aibeihousehold Infringing Listing" and "aibeihousehold Counterfeit Product," respectively). The aibeihousehold Infringing Listing appears on Defendant aibeihousehold's Merchant Storefront, https://www.dhgate.com/store/21048065, and offers the aibeihousehold Counterfeit Product for $8.27 per item, using, featuring and/or incorporating one or more of the Baby Shark Marks and/or Baby Shark Works and/or confusingly or substantially similar marks or artwork in the listing title "32cm 12inch **Baby Shark** Official Song Doll Singing Plush Lighting Cartoon Shark Stuffed & Plush Toys Pink Yellow Blue" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the aibeihousehold Counterfeit Product is virtually identical to one of Plaintiff's Baby Shark Products and features and/or incorporates one or more of the Baby Shark Marks and/or Baby Shark Works. There is no question that the aibeihousehold Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Baby Shark Products or that the aibeihousehold Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Baby Shark Marks and/or Baby Shark Works:

**<u>Baby Shark Product</u>**

**<u>Defendant's Counterfeit Product</u>**





39.    By way of another example, below on the left is an image of one of Plaintiff's Baby Shark Products.  Depicted further below is a listing for Defendant betterbuy's Counterfeit Product ("betterbuy Infringing Listing" and "betterbuy Counterfeit Product," respectively).  The betterbuy Infringing Listing appears on Defendant betterbuy's Merchant Storefront, https://www.dhgate.com/store/14498822, and offers the betterbuy Counterfeit Product for $10.22 per item, using, featuring and/or incorporating one or more of the Baby Shark Marks and/or Baby Shark Works and/or confusingly or substantially similar marks or artwork in the listing title "Hot 3 Color 30cm(11.8inch) **Baby shark** With Music Cute Animal Plush **Baby Shark** Dolls Singing English Song For Children Girl" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the betterbuy Counterfeit Product is virtually identical to one of Plaintiff's Baby Shark Products and features and/or incorporates one or more of the Baby Shark Marks and/or Baby Shark Works.  There is no question that the betterbuy Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Baby Shark Products or that the betterbuy Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Baby Shark Marks and/or Baby Shark Works:

**Baby Shark Product**



**Defendant's Counterfeit Product**



40.    As another example, below on the left is an image of one of Plaintiff's Baby Shark

Products.   Depicted further below is a listing for Defendant egomall's Counterfeit Product ("egomall Infringing Listing" and "egomall Counterfeit Product," respectively).   The egomall Infringing Listing appears on Defendant egomall's Merchant Storefront, https://www.dhgate.com/store/14499756, and offers the egomall Counterfeit Product for $7.01 – $9.99 per item, using, featuring and/or incorporating one or more of the Baby Shark Marks and/or Baby Shark Works and/or confusingly or substantially similar marks or artwork in the listing title "2019 Soft Dolls **Baby Shark** Cartoon Toys With Music LED Cute Animal Plush Baby Toy Shark Baby Dolls Singing English Song Children gift" (emphasis added) and in the descriptions and/or product images in the body of the listing.   Further, the egomall Counterfeit Product is virtually identical to one of Plaintiff's Baby Shark Products and features and/or incorporates one or more of the Baby Shark Marks and/or Baby Shark Works.   There is no question that the egomall Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Baby Shark Products or that the egomall Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Baby Shark Marks and/or Baby Shark Works:

<div style="display:flex; justify-content:space-around;">

**<u>Baby Shark Product</u>**

**<u>Defendant's Counterfeit Product</u>**

</div>




41.   By these dealings in Counterfeit Products (including, without limitation, copying,

manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Baby Shark Marks and/or Baby Shark Works, and have used marks and/or artwork that are confusingly similar to, identical to, substantially similar to and/or constitute counterfeiting and/or infringement of the  Baby Shark Marks and/or Baby Shark Works in order to confuse consumers into believing that such Counterfeit Products are the Baby Shark Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Baby Shark Marks and/or Baby Shark Works, after Plaintiff obtained federal registrations in the Baby Shark Marks and Baby Shark Works, as alleged above, and after Plaintiff's Baby Shark Content, Baby Shark Products, Baby Shark Marks and Baby Shark Works became well-known to the purchasing public.

42.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Baby Shark Marks and Baby Shark Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Baby Shark Content and Baby Shark Products, and in bad faith adopted the Baby Shark Marks and/or Baby Shark Works.

43.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Baby Shark Marks, Baby Shark Works, Baby Shark Products and Baby Shark Content.

44.    Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit

Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

45.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Baby Shark Marks and/or Baby Shark Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

46.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### (Trademark Counterfeiting)
### [15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]

47.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

48.     Plaintiff is the exclusive owner of all right and title to the Baby Shark Marks.

49.     Plaintiff has continuously used the Baby Shark Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

50.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Baby Shark Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Baby Shark Marks and/or used spurious designations that are identical with, or indistinguishable from, the Baby Shark Marks on or in connection with the manufacturing, import,

export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

51.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Baby Shark Marks through their participation in such activities.

52.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Baby Shark Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

53.     Defendants' unauthorized use of the Baby Shark Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Baby Shark Marks.

54.     Defendants' actions constitute willful counterfeiting of the Baby Shark Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

55.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Baby Shark Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Baby Shark Marks.

56.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

57.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58.     Plaintiff has continuously used the Baby Shark Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

59.     Plaintiff, as owner of all right, title and interest in and to the Baby Shark Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

60.     Defendants were, at the time they engaged in their actions as alleged herein, actually

aware that Plaintiff is the owner of the federal trademark registrations for the Baby Shark Marks.

61.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Baby Shark Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Baby Shark Products and/or related products bearing the Baby Shark Marks into the stream of commerce.

62.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Baby Shark Marks and/or which are identical or confusingly similar to the Baby Shark Marks.

63.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Baby Shark Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

64.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Baby Shark Marks.

65.     Defendants' egregious and intentional use of the Baby Shark Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Baby Shark

Products or are otherwise associated with, or authorized by, Plaintiff.

66.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Baby Shark Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

67.    Defendants' continued, knowing, and intentional use of the Baby Shark Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Baby Shark Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

68.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Baby Shark Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Baby Shark Marks.

69.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (Infringement of Unregistered Trademark)
### [15 U.S.C. § 1125/Lanham Act § 43(a)]

70.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71.    Plaintiff has continuously used the Baby Shark Applications in interstate commerce

since on or before the dates of first use as reflected in the respective application attached hereto as Exhibit B.

72.   Plaintiff, as the owner of all right, title and interest in and to the Baby Shark Applications, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

73.   Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the Baby Shark Applications.

74.   Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiff, as the trademark owner of the Baby Shark Applications, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Baby Shark Products and/or related products bearing the Baby Shark Applications into the stream of commerce.

75.   Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Baby Shark Applications and/or which are identical or confusingly similar to the Baby Shark Applications.

76.   Defendants knowingly and intentionally reproduced, copied and colorably imitated the Baby Shark Applications and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

77.   Defendants were, at the time they engaged in their illegal and infringing actions as

alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Baby Shark Applications.

78.    Defendants' egregious and intentional use of the Baby Shark Applications in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Baby Shark Products or are otherwise associated with or authorized by Plaintiff.

79.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Baby Shark Applications, as well as with bad faith and the intent to cause confusion, mistake and deception.

80.    Defendants' continued, knowing and intentional use of the Baby Shark Applications without Plaintiff's consent or authorization constitutes intentional infringement of the Baby Shark Applications in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

81.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Baby Shark Applications and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Baby Shark Applications.

82.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of

Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

83.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

84.     Plaintiff, as the owner of all right, title and interest in and to the Baby Shark Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

85.     The Baby Shark Marks are inherently distinctive and/or have acquired distinctiveness.

86.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Baby Shark Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Baby Shark Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on

the goodwill associated with, and the consumer recognition of, the Baby Shark Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

87.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Baby Shark Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Baby Shark Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Baby Shark Products and Baby Shark Content and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Baby Shark Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

88.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Baby Shark Marks would cause confusion, mistake or deception among purchasers, users and the public.

89.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Baby Shark Products, Baby Shark Content and Baby Shark Marks.

90.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Baby Shark Products

and by depriving Plaintiff of the value of its Baby Shark Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Baby Shark Marks.

91.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

92.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

93.     Plaintiff is the exclusive owner of the Baby Shark Works.

94.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Baby Shark Works.

95.     Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Baby Shark Products and/or Baby Shark Works.

96.     Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Baby Shark Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such Baby Shark Works, or artwork that is, at a minimum, substantially similar to the Baby Shark Works.

97.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Baby Shark Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Baby Shark Works in violation of 17 U.S.C. § 501(a).

98.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

99.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

100.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

101.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Baby Shark Products and Baby Shark Content to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

102.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for

sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

103.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

104.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

105.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Baby Shark Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Baby Shark Marks and Baby Shark Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

106.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

107.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

108.    By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

109.    Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers

just, which Plaintiff may elect prior to the rendering of final judgment;

C.       For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Baby Shark Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.       For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.       For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Baby Shark Works under 17 U.S.C. § 501(a);

F.       In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Baby Shark Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

G.       For an award of damages to be proven at trial for common law unfair competition;

H.       For an award of damages in an amount to be proven at trial for unjust enrichment;

I.       For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

ii.  directly or indirectly infringing in any manner any of Plaintiff's Baby Shark Marks and Baby Shark Works;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Baby Shark Marks and Baby Shark Works, to identify any goods or services not authorized by Plaintiff;

iv.  using any of Plaintiff's Baby Shark Marks or Baby Shark Works, or any other marks or artwork that are confusingly or substantially similar to the Baby Shark Marks or Baby Shark Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.  engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.  engaging in any other actions that constitute unfair competition with Plaintiff;

viii.  engaging in any other act in derogation of Plaintiff's rights;

ix.  from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.  from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.  instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

J.     For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Baby Shark Marks or Baby Shark Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks or Baby Shark Works;

K.     For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Baby Shark Marks or Baby Shark Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks or Baby Shark Works pursuant to 15 U.S.C. § 1118;

L.     For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

M.     For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

N.     For an award of exemplary or punitive damages in an amount to be determined by the Court;

O.     For Plaintiff's reasonable attorneys' fees;

P.      For all costs of suit; and

Q.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: August 15, 2019

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:

Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:      (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

# EXHIBIT A

















# EXHIBIT B

# United States of America

## United States Patent and Trademark Office

# PINKFONG

**Reg. No. 4,993,122**

**Registered July 5, 2016**

**Int. Cls.: 9 and 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

SMART STUDY CO., LTD. (REPUBLIC OF KOREA CORPORATION)
94, MYEONGDAL-RO, SEOCHO-GU
SEOUL, REPUBLIC OF KOREA

FOR: CHILDREN'S EDUCATIONAL SOFTWARE; CHILDREN'S EDUCATIONAL MUSIC CDS AND DVDS; COMPUTER PROGRAMS FOR PROCESSING DIGITAL MUSIC FILES; DIGITAL MUSIC DOWNLOADABLE FROM THE INTERNET; DOWNLOADABLE MUSIC FILES; COMPUTER APPLICATION SOFTWARE FOR MOBILE PHONES, NAMELY, SOFT-WARE FOR THE EDUCATION OF CHILDREN AND CHILDREN'S ENTERTAINMENT, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 8-29-2014; IN COMMERCE 8-29-2014.

FOR: CLOTHING AND FOOTWEAR, NAMELY, ATHLETIC SHOES, BABY PANTS, BELTS, BLOUSES, CAPS, COATS, DRESSES, EXERCISE SUITS, FOOTWEAR, GLOVES, HATS, JACKETS, JUMPERS, LEGGINGS, LEOTARDS, MITTENS, OVERALLS, PANTS, POLO SHIRTS, SANDALS, SHIRTS, SHOES, SHORTS, SKIRTS, SLEEPWEAR, SLIPPERS, SNEAKERS, SNOWSUITS, SOCKS, SPORT SHIRTS, SWEATERS, SWEATSHIRTS, SWIM-WEAR, T-SHIRTS, TIGHTS, WARM-UP SUITS; BABY BIBS, NOT OF PAPER, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 9-4-2015; IN COMMERCE 9-4-2015.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-819,812, FILED 11-13-2015.

DREW SANDER, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office
(USPTO). The time periods for filing are based on the U.S. registration date (not the international registration
date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to
those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international
registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the
underlying international registration at the International Bureau of the World Intellectual Property Organization,
under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated
from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal
forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark
owners/holders who authorize e-mail communication and maintain a current e-mail address with the
USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark
Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms
available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# PINKFONG

**Reg. No. 5,327,527**

**Registered Nov. 07, 2017**

**Int. Cl.: 9, 16, 28**

**Trademark**

**Principal Register**

Smart Study Co., Ltd. (KOREA, REPUBLIC OF limited company (ltd.) )
94, Myeongdal-ro, Seocho-gu
Seoul, REPUBLIC OF KOREA

CLASS 9: Downloadable electronic publications in the nature of study books or papers in the field of education and entertainment; Digital media, namely, pre-recorded DVDs, downloadable audio and video recordings, and CDs for child education and entertainment; Video disks, video tapes, DVDs, downloadable audio and videos recordings featuring audio-visual children's entertainment programs and CDs with recorded animated cartoons; Pre-recorded CDs for child education and entertainment; Electronic memories; Computer mice; Computers; Computer software for use in recording and reproducing of sound, data or images in the field of education and entertainment; Mobile telephones; Electric audio and visual apparatus and instruments, namely, digital video and audio recorders, televisions and MP3-players for use in recording and reproducing of sound, data or images in the field of education and entertainment; Electric batteries; Eyeglasses; Spectacles; Digital cameras; Goggles for sports

CLASS 16: Stationery; Office requisites, namely, document files, jackets for papers, whiteboards, blackboards and hanging folders; School supplies, namely, stationery; Printed publications, namely, books, soundbooks, and workbooks in the field of education and entertainment; Printed matter, namely, news bulletins, newspaper cartoons, advertising boards of paper and calendars in the field of education and entertainment; Pictures; Photographs; Paper; Toilet paper; Paper tissues

CLASS 28: Toys, namely, water toys, plush toys, musical toys, sketching toys and paper toy figures; Dolls; Butterfly nets; Toys for pets; Christmas tree ornaments; Fairground ride apparatus; Games, namely, birthday party supply pack consisting of balloons, party favor hats, and paper party favors; Sporting articles other than golf articles or climbing articles, namely, footballs, baseballs, basketballs, tennis balls, rackets for tennis or badminton, swimming jackets and swimming floats; Golf bags with or without wheels; Golf gloves; Golf balls; Golf clubs; Fishing tackle; Twirling batons; Portable games with liquid crystal displays

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF KOREA, REPUBLIC OF , REG. NO. 1185867, DATED 06-21-2016, EXPIRES 06-21-2026

OWNER OF KOREA, REPUBLIC OF , REG. NO. 1185869, DATED 06-21-2016, EXPIRES 06-21-2026

OWNER OF KOREA, REPUBLIC OF , REG. NO. 1185868, DATED 06-21-2016, EXPIRES 06-21-2026



Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

SER. NO. 87-379,140, FILED 03-21-2017

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# PINKFONG

**Reg. No. 5,483,744**

**Registered Jun. 05, 2018**

**Int. Cl.: 3, 21**

**Trademark**

**Principal Register**

Smart Study Co., Ltd. (KOREA, REPUBLIC OF limited company (ltd.) )
94, Myeongdal-ro, Seocho-gu
Seoul, REPUBLIC OF KOREA

CLASS 3: Cosmetics, namely, compacts, lip sticks, skin lotion and creams, and suncream; Baby lotions; Baby milk lotion; Baby oil; Baby skin creams; Lip balm; Eye make-up; Hair conditioners for babies; Hair creams; Perfumes; Perfumery for household purposes; Baby wipes for cosmetic use; Pre-moistened cosmetic tissues; Powder laundry detergents; Beauty soap; Shampoos; Dentifrices

CLASS 21: Cosmetic utensils, namely, brushes; Toothbrushes; Toothbrush holders; Toothbrush cases; Cleaning tools and washing utensils other than electric, namely, cleaning pads; Milk jugs; Cups; Cups for baby food; Buckets; Reusable stainless steel water bottles sold empty; Potties for children; Coin banks; Candy boxes; Electric toothbrush replacement heads; Gloves for household purposes; Bath brushes; Works of art of porcelain, earthenware or glass

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

PRIORITY CLAIMED UNDER SEC. 44(D) ON KOREA, REPUBLIC OF APPLICATION NO. 40-2017-0330, FILED 03-14-2017, REG. NO. 1312638, DATED 12-13-2017, EXPIRES 12-13-2027

PRIORITY CLAIMED UNDER SEC. 44(D) ON KOREA, REPUBLIC OF APPLICATION NO. 40-2017-0033, FILED 03-14-2017, REG. NO. 1312639, DATED 12-13-2017, EXPIRES 12-13-2027

SER. NO. 87-379,178, FILED 03-21-2017

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# Baby Shark

**Reg. No. 5,803,108**

**Registered Jul. 16, 2019**

**Int. Cl.: 28**

**Trademark**

**Principal Register**

Smart Study Co., Ltd.  (KOREA, REPUBLIC OF LIMITED COMPANY (LTD.) )
(seocho-dong, 5th Floor)
94, Myeongdal-ro, Seocho-gu
Seoul, REPUBLIC OF KOREA

CLASS 28: Toys, namely, rubber character toys; Butterfly nets; Toys for pets; Sporting articles other than golf and climbing articles, namely, tennis rackets, nets for sports, balls for sports, baseball bats; Golf bags with or without wheels; Golf gloves; Golf balls; Golf clubs; Fishing tackle; Twirling batons; Portable games with liquid crystal display

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF KOREA, REPUBLIC OF , REG. NO. 40-1290916, DATED 09-29-2017, EXPIRES 09-29-2027

No claim is made to the exclusive right to use the following apart from the mark as shown: "SHARK" FOR TOYS, NAMELY, RUBBER CHARACTER TOYS

SER. NO. 87-778,476, FILED 01-31-2018

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.


**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*


**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

## REQUEST FOR EXTENSION OF PROTECTION

## SERIAL NUMBER: 79249403

## FILING DATE: 10/16/2018

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **MARK SECTION** | |
| IMAGE | \\TICRS\EXPORT17\IMAGEOUT17\792\494\79249403\xml1\APP0002.JPG |
| COLLECTIVE, CERTIFICATE OR GUARANTEE MARK | NO |
| MARK IN STANDARD CHARACTERS | YES |
| MARK IN COLOR | NO |
| THREE DIMENSIONAL MARK | NO |
| SOUND MARK | NO |
| THE WORDS CONTAINED IN THE MARK HAVE NO MEANING (AND THEREFORE CANNOT BE TRANSLATED) | YES |
| TM IMAGE: COLOR | Grey Scale |
| IMAGE FILE NAME | \\TICRS\EXPORT17\IMAGEOUT17\792\494\79249403\xml1\APP0002.JPG |
| TYPE (IMAGE TYPE) | JPG |
| TEXTUAL ELEMENTS OF MARK | pinkfong Baby Shark |
| **HOLDER DETAILS** | |
| CLIENT IDENTIFIER | 968675 |
| NOTIFICATION LANGUAGE | ENGLISH |
| NAME | Smart Study Co., Ltd. |
| ADDRESS | 94, Myeongdal-ro, |
| | Seocho-gu |
| | Seoul |
| COUNTRY | Republic of Korea |
| ENTITLEMENT NATIONALITY OF APPLICANT/TRANSFEREE/HOLDER | Republic of Korea |
| LEGAL NATURE | Corporation |
| LEGAL NATURE: PLACE INCORPORATED | Republic of Korea |
| CORRESPONDENCE INDICATOR | YES |
| **LIMITATION DETAILS** | |
| DESIGNATED CONTRACTING PARTY CODE | United States of America |
| GOODS AND SERVICES LIMITED TO | 21 |
| GOODS AND SERVICES LIMITED TO | Baby bath basins; plastic bathtubs for children; plastic buckets for storing bath toys; bath brushes; water bottles; thermos bottle; cleaning tools and washing utensils (other than electric); cleaners for spectacles; tableware set for children; potties for children; milk jugs; water bottles for infants; cups for baby food; works of art of porcelain, |

10

|  |  |
| --- | --- |
|  | earthenware or glass; coin banks; toothbrushes, electric; toothbrushes; toothbrush holders; candy boxes; cups; cosmetic utensils; gloves for household purposes. |
| GOODS AND SERVICES LIMITED TO | 24 |
| GOODS AND SERVICES LIMITED TO | Quilts; children's blankets; bed sheets; bed linen; towel for swimming; children's towels; household linen; ribbonlike fabrics; pillow covers; non-woven fabrics and felts; vinyl cloth; shower curtains; diaper changing pad covers of textile; diaper changing cloths for babies; cot bumpers [bed linen]; place mats of textile; labels of textile; cloth banners; fitted toilet seat covers of textile; handkerchiefs of textile; textile coverings; curtains made of textile fabrics; sleeping bags; covers for cushions; table linen; bed covers. |

## BASIC GOODS AND SERVICES

|  |  |
| --- | --- |
| VERSION OF NICE CLASSIFICATION USED | 11-2018 |
| NICE CLASSIFICATION | 21 |
| GOODS AND SERVICES | Baby bath basins; plastic bathtubs for children; plastic buckets for storing bath toys; bath brushes; water bottles; thermos bottles; cleaning tools and washing utensils (other than electric); cleaners for spectacles; tableware set for children; potties for children; milk jugs; water bottles for infants; cups for baby food; works of art of porcelain, earthenware or glass; coin banks; toothbrushes, electric; toothbrushes; toothbrush holders; candy boxes; cups; cosmetic utensils; gloves for household purposes. |
| NICE CLASSIFICATION | 24 |
| GOODS AND SERVICES | Quilts; children's blankets; bed sheets; bed linen; towels for swimming; children's towels; household linen; ribbonlike fabrics; pillow covers; non-woven fabrics and felts; vinyl cloth; shower curtains; diaper changing pad covers of textile; diaper changing cloths for babies; cot bumpers [bed linen]; place mats of textile; labels of textile; cloth banners; fitted toilet seat covers of textile; handkerchiefs of textile; textile coverings; curtains made of textile fabrics; sleeping bags; covers for cushions; table linen; bed covers. |
| NICE CLASSIFICATION | 28 |
| GOODS AND SERVICES | Twirling batons; butterfly nets; golf bags with or without wheels; golf balls; golf gloves; golf clubs; fishing tackle; stuffed dolls; sporting articles (other than golf articles/climbing articles); toys for pets; games and playthings; toys (playthings); fairground ride apparatus; dolls; toys; ornaments for Christmas trees, except illumination articles and confectionery; portable games with liquid crystal displays. |

## PARIS PRIORITY DETAILS

|  |  |
| --- | --- |
| PARIS PRIORITY CODE: | Republic of Korea |
| PARIS PRIORITY APPLICATION NUMBER | 4020180094182 |
| PARIS PRIORITY APPLICATION DATE | 07/10/2018 |
| PRIORITY CLASSIFICATION (NICCLAI) | 28 |
| PRIORITY GOODS & SERVICES |  |

## PARIS PRIORITY DETAILS

|  |  |
| --- | --- |
| PARIS PRIORITY CODE: | Republic of Korea |
| PARIS PRIORITY APPLICATION NUMBER | 4020180124072 |
| PARIS PRIORITY APPLICATION DATE | 09/05/2018 |
| PRIORITY CLASSIFICATION (NICCLAI) | 21 |
| PRIORITY GOODS & SERVICES |  |

## PARIS PRIORITY DETAILS

|  |  |
| --- | --- |
| PARIS PRIORITY CODE: | Republic of Korea |

| | |
|---|---|
| PARIS PRIORITY APPLICATION NUMBER | 4020180124073 |
| PARIS PRIORITY APPLICATION DATE | 09/05/2018 |
| PRIORITY CLASSIFICATION (NICCLAI) | 24 |
| PRIORITY GOODS & SERVICES | |

**BASE REGISTRATION DETAILS**

| | |
|---|---|
| BASE APPLICATION NUMBER | 4020180124072 |
| BASE APPLICATION DATE | 09/05/2018 |

**BASE REGISTRATION DETAILS**

| | |
|---|---|
| BASE APPLICATION NUMBER | 4020180124073 |
| BASE APPLICATION DATE | 09/05/2018 |

**BASE REGISTRATION DETAILS**

| | |
|---|---|
| BASE APPLICATION NUMBER | 4020180094182 |
| BASE APPLICATION DATE | 07/10/2018 |

**REPRESENTATIVE DETAILS**

| | |
|---|---|
| CLIENT IDENTIFIER | 980983 |
| NAME | WOO Jong Kyun |
| ADDRESS | Jeongdong Building, 17F, |
| | 21-15 Jeongdong-gil, |
| | Jung-gu |
| | Seoul 04518 |
| COUNTRY | Republic of Korea |

**INTENT TO USE GROUP**

| | |
|---|---|
| CONTRACTING PARTY CODE | United States of America |

**DESIGNATIONS**

| | |
|---|---|
| DESIGNATIONS UNDER THE PROTOCOL | United States of America |

**INTERNATIONAL REGISTRATION DETAILS**

| | |
|---|---|
| INTERNATIONAL REGISTRATION NUMBER | 1443884 |
| INTERNATIONAL REGISTRATION DATE OF MARK | 10/16/2018 |
| INTERNATIONAL REGISTRATION EXPIRY DATE | 10/16/2028 |
| EFFECTIVE DATE OF MODIFICATION | 10/16/2018 |
| NOTIFICATION DATE | 01/10/2019 |
| DATE OF RECORDAL IN INTERNATIONAL REGISTER | 12/27/2018 |
| IB DOCUMENT ID | 1193410901 |
| OFFICE OF ORIGIN CODE | Republic of Korea |
| OFFICE REFERENCE | 79249403 |
| TRANSACTION TYPE VALUES | Initial Designation |
| ORIGINAL LANGUAGE | ENGLISH |
| INSTRUMENT UNDER WHICH CONTRACTING | |

| | |
|---|---|
| PARTY IS DESIGNATED | Protocol |
| DURATION OF MARK (YEARS) | 10 |

# pinkfong Baby Shark

# REQUEST FOR EXTENSION OF PROTECTION

## SERIAL NUMBER: 79252869

## FILING DATE: 01/02/2019

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **MARK SECTION** | |
| IMAGE | \\TICRS\EXPORT17\IMAGEOUT17\792\528\79252869\xml1\APP0002.JPG |
| COLLECTIVE, CERTIFICATE OR GUARANTEE MARK | NO |
| MARK IN STANDARD CHARACTERS | YES |
| MARK IN COLOR | NO |
| THREE DIMENSIONAL MARK | NO |
| SOUND MARK | NO |
| THE WORDS CONTAINED IN THE MARK HAVE NO MEANING (AND THEREFORE CANNOT BE TRANSLATED) | YES |
| TM IMAGE: COLOR | Grey Scale |
| IMAGE FILE NAME | \\TICRS\EXPORT17\IMAGEOUT17\792\528\79252869\xml1\APP0002.JPG |
| TYPE (IMAGE TYPE) | JPG |
| TEXTUAL ELEMENTS OF MARK | pinkfong |
| **HOLDER DETAILS** | |
| CLIENT IDENTIFIER | 1157203 |
| NOTIFICATION LANGUAGE | ENGLISH |
| NAME | Smart Study Co., Ltd. |
| ADDRESS | 5th Floor, 94, Myeongdal-ro, |
| | Seocho-gu |
| | Seoul |
| COUNTRY | Republic of Korea |
| ENTITLEMENT NATIONALITY OF APPLICANT/TRANSFEREE/HOLDER | Republic of Korea |
| LEGAL NATURE | Corporation |
| LEGAL NATURE: PLACE INCORPORATED | Republic of Korea |
| CORRESPONDENCE INDICATOR | YES |
| **LIMITATION DETAILS** | |
| DESIGNATED CONTRACTING PARTY CODE | United States of America |
| GOODS AND SERVICES (HEADER) | List limited to class 41. |
| **BASIC GOODS AND SERVICES** | |
| VERSION OF NICE CLASSIFICATION USED | 11-2018 |
| NICE CLASSIFICATION | 09 |

| | |
|---|---|
| GOODS AND SERVICES | Goggles; electronic publications, downloadable; downloadable smart phone application (software); downloadable music files; downloadable electronic study books or papers; computer programs [downloadable software]; digital cameras; mouse [computer peripheral]; animated cartoons; eyeglasses; pre-recorded music compact discs; pre-recorded music recorded on electronic media; pre-recorded non-musical electronic media (excluding computer software); mobile telephones; computer application software for mobile phones; electric audio and visual apparatus and instruments; electronic memories; electric batteries; computers; computer software; computer game software; downloadable mobile game software; recorded computer game programs; downloadable game programs provided online from a computer network or mobile phone network; computer game software for use on mobile and cellular phones; computer software for wireless content delivery; electronic publications recorded on computer media; mini projector; projectors. |
| NICE CLASSIFICATION | 16 |
| GOODS AND SERVICES | Pictures; stationery; office requisites, except furniture; books; stickers; printed matters (except books and periodicals); photographs [printed]; paper; table decorations of paper; paper tissues; printed publications; school supplies [stationery]; toilet paper; stickers [stationery]; picture books; baby books [memory books]; pop-up books; bibs of paper for infant; wrapping paper for gift; packaging containers of paper; printed tickets. |
| NICE CLASSIFICATION | 25 |
| GOODS AND SERVICES | Outerclothing; underclothing; neckties; money belts [clothing]; headbands [clothing]; caps [headwear]; mufflers; waterproof clothing; ear muffs [clothing]; winter face masks (clothing); winter gloves; shirts; swimsuits; sweaters; scarfs; stockings; footwear for sports; sports wear; footwear; children's clothing; socks; overcoats (except wear for exclusive use for sports and Korean traditional dress); rain wear; infants' clothing; clothing; suspenders; belts [clothing]; leather belts [clothing]; hanbok [Korean traditional clothing]; ski gloves; snowboarding gloves. |
| NICE CLASSIFICATION | 28 |
| GOODS AND SERVICES | Twirling batons; butterfly nets; golf bags with or without wheels; golf balls; golf gloves; golf clubs; fishing tackle; sporting articles (other than golf articles/climbing articles); toys for pets; games and playthings; toys (playthings); fairground ride apparatus; dolls; toys; ornaments for Christmas trees, except illumination articles and confectionery; portable games with liquid crystal displays; swimming floats; swimming aids; knee guards [sports articles]; water guns. |
| NICE CLASSIFICATION | 41 |
| GOODS AND SERVICES | Providing amusement arcade services; providing of gaming facilities; electronic publication of texts and printed matter, other than publicity texts, on the internet; providing of photographic or video content via a website on the internet for educational purposes; conducting of children field study for educational purposes; providing electronic publications from a global computer network or the internet, not downloadable; recreation facilities services; providing recreation facilities; production of animated films; production of cartoons; distribution of cartoons; production of animation programmes; game services provided on-line from a mobile phone network; arranging and conducting of mobile game competitions; organising of cultural events; planning and production of musicals; production and distribution of animation TV series; production and presentation and distribution of animated films; production of animations; providing entertainment and educational services at children's play school; provision of children's playgrounds; entertainment services; multimedia publishing of printed matter, books, magazines, journals, newspapers, newsletters, tutorials, maps, graphics, photographs, videos, music and electronic publications; providing on-line electronic publications, not downloadable; publishing of electronic publications; electronic publishing services; concert, musical and video performances. |

**PARIS PRIORITY DETAILS**

PARIS PRIORITY CODE:                          Republic of Korea

PARIS PRIORITY APPLICATION NUMBER             4020180124633

PARIS PRIORITY APPLICATION DATE               09/06/2018

PRIORITY CLASSIFICATION (NICCLAI)             41

PRIORITY GOODS & SERVICES

## PARIS PRIORITY DETAILS

PARIS PRIORITY CODE:                          Republic of Korea

PARIS PRIORITY APPLICATION NUMBER             4020180182734

PARIS PRIORITY APPLICATION DATE               12/28/2018

PRIORITY CLASSIFICATION (NICCLAI)             09

PRIORITY GOODS & SERVICES

## PARIS PRIORITY DETAILS

PARIS PRIORITY CODE:                          Republic of Korea

PARIS PRIORITY APPLICATION NUMBER             4020180182735

PARIS PRIORITY APPLICATION DATE               12/28/2018

PRIORITY CLASSIFICATION (NICCLAI)             16

PRIORITY GOODS & SERVICES

## PARIS PRIORITY DETAILS

PARIS PRIORITY CODE:                          Republic of Korea

PARIS PRIORITY APPLICATION NUMBER             4020180182736

PARIS PRIORITY APPLICATION DATE               12/28/2018

PRIORITY CLASSIFICATION (NICCLAI)             25

PRIORITY GOODS & SERVICES

## PARIS PRIORITY DETAILS

PARIS PRIORITY CODE:                          Republic of Korea

PARIS PRIORITY APPLICATION NUMBER             4020180182737

PARIS PRIORITY APPLICATION DATE               12/28/2018

PRIORITY CLASSIFICATION (NICCLAI)             28

PRIORITY GOODS & SERVICES

## BASE REGISTRATION DETAILS

BASE APPLICATION NUMBER                        4020180182734

BASE APPLICATION DATE                          12/28/2018

## BASE REGISTRATION DETAILS

BASE APPLICATION NUMBER                        4020180182735

BASE APPLICATION DATE                          12/28/2018

## BASE REGISTRATION DETAILS

BASE APPLICATION NUMBER                        4020180182736

BASE APPLICATION DATE                          12/28/2018

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE APPLICATION NUMBER | 4020180182737 |
| BASE APPLICATION DATE | 12/28/2018 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE APPLICATION NUMBER | 4020180124633 |
| BASE APPLICATION DATE | 09/06/2018 |

## REPRESENTATIVE DETAILS

| | |
|---|---|
| CLIENT IDENTIFIER | 980983 |
| NAME | WOO Jong Kyun |
| ADDRESS | Jeongdong Building, 17F, |
| | 21-15 Jeongdong-gil, |
| | Jung-gu |
| | Seoul 04518 |
| COUNTRY | Republic of Korea |

## INTENT TO USE GROUP

| | |
|---|---|
| CONTRACTING PARTY CODE | United States of America |

## DESIGNATIONS

| | |
|---|---|
| DESIGNATIONS UNDER THE PROTOCOL | United States of America |

## INTERNATIONAL REGISTRATION DETAILS

| | |
|---|---|
| INTERNATIONAL REGISTRATION NUMBER | 1452088 |
| INTERNATIONAL REGISTRATION DATE OF MARK | 01/02/2019 |
| INTERNATIONAL REGISTRATION EXPIRY DATE | 01/02/2029 |
| EFFECTIVE DATE OF MODIFICATION | 01/02/2019 |
| NOTIFICATION DATE | 02/28/2019 |
| DATE OF RECORDAL IN INTERNATIONAL REGISTER | 02/11/2019 |
| IB DOCUMENT ID | 1218007401 |
| OFFICE OF ORIGIN CODE | Republic of Korea |
| OFFICE REFERENCE | 79252869 |
| TRANSACTION TYPE VALUES | Initial Designation |
| ORIGINAL LANGUAGE | ENGLISH |
| INSTRUMENT UNDER WHICH CONTRACTING PARTY IS DESIGNATED | Protocol |
| DURATION OF MARK (YEARS) | 10 |

pinkfong

## REQUEST FOR EXTENSION OF PROTECTION

### SERIAL NUMBER: 79253035

### FILING DATE: 01/02/2019

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **MARK SECTION** | |
| IMAGE | \\TICRS\EXPORT17\IMAGEOUT17\792\530\79253035\xml1\APP0002.JPG |
| COLLECTIVE, CERTIFICATE OR GUARANTEE MARK | NO |
| MARK IN STANDARD CHARACTERS | YES |
| MARK IN COLOR | NO |
| THREE DIMENSIONAL MARK | NO |
| SOUND MARK | NO |
| THE WORDS CONTAINED IN THE MARK HAVE NO MEANING (AND THEREFORE CANNOT BE TRANSLATED) | YES |
| TM IMAGE: COLOR | Grey Scale |
| IMAGE FILE NAME | \\TICRS\EXPORT17\IMAGEOUT17\792\530\79253035\xml1\APP0002.JPG |
| TYPE (IMAGE TYPE) | JPG |
| TEXTUAL ELEMENTS OF MARK | Baby Shark |
| **HOLDER DETAILS** | |
| CLIENT IDENTIFIER | 1154113 |
| NOTIFICATION LANGUAGE | ENGLISH |
| NAME | Smart Study Co., Ltd. |
| ADDRESS | 5th Floor, 94, Myeongdal-ro, |
| | Seocho-gu, Seoul |
| COUNTRY | Republic of Korea |
| ENTITLEMENT NATIONALITY OF APPLICANT/TRANSFEREE/HOLDER | Republic of Korea |
| LEGAL NATURE | Corporation |
| LEGAL NATURE: PLACE INCORPORATED | Republic of Korea |
| CORRESPONDENCE INDICATOR | YES |
| **LIMITATION DETAILS** | |
| DESIGNATED CONTRACTING PARTY CODE | United States of America |
| GOODS AND SERVICES LIMITED TO | 09 |
| | Computer software; computer game software; downloadable mobile game software; downloadable smart phone application (software); recorded computer game programs; downloadable game programs, provided from online; computer game software for use on mobile and cellular phones; computer software for wireless content delivery; electronic publications recorded on computer media; electronic publications, downloadable; mini projector; projectors; downloadable electronic |

20

| | |
|---|---|
| GOODS AND SERVICES LIMITED TO | study books or papers; pre-recorded non-musical electronic media (excluding computer software); animated cartoons; pre-recorded music electronic media; downloadable music files; mobile telephones; electric audio and visual apparatus and instruments; digital cameras; goggles; microphones; floatation vests; swim floats for safety purposes; virtual reality headsets; headsets for mobile phones; wireless headsets; headset; CDs; life jackets; computer programs [downloadable software]; mouse [computer peripheral]; eyeglasses; pre-recorded music compact discs; computer application software for mobile phones; electronic memories; electric batteries; computers. |
| GOODS AND SERVICES (FOOTER) | Classes 16, 25 and 41 remain unchanged. |

## BASIC GOODS AND SERVICES

| | |
|---|---|
| VERSION OF NICE CLASSIFICATION USED | 11-2018 |
| NICE CLASSIFICATION | 09 |
| GOODS AND SERVICES | Swim floats for safety purposes; virtual reality headsets; headsets for mobile phones; wireless headsets; headset; CDs; life jackets; computer programs [downloadable software]; mouse [computer peripheral]; eyeglasses; pre-recorded music compact discs; computer application software for mobile phones; electronic memories; electric batteries; computers; computer software; computer game software; downloadable mobile game software; downloadable smart phone application (software); recorded computer game programs; downloadable game programs, provided from online; computer game software for use on mobile and cellular phones; computer software for wireless content delivery; electronic publications recorded on computer media; electronic publications, downloadable; mini projector; projectors; downloadable electronic study books or papers; pre-recorded non-musical electronic media (excluding computer software); animated cartoons; pre-recorded music electronic media; downloadable music files; mobile telephones; electric audio and visual apparatus and instruments; digital cameras; goggles; microphones; floatation vests. |
| NICE CLASSIFICATION | 16 |
| GOODS AND SERVICES | Stationery; office requisites, except furniture; school supplies [stationery]; books; printed publications; table decorations of paper; printed matters (except books and periodicals); pictures; photographs [printed]; paper; toilet paper; paper tissues; stickers [stationery]; stickers; picture books; baby books [memory books]; pop-up books; bibs of paper for infant; wrapping paper for gift; packaging containers of paper; printed tickets. |
| NICE CLASSIFICATION | 25 |
| GOODS AND SERVICES | Clothing; footwear; mufflers; socks; hats; money belts [clothing]; hanbok [Korean traditional clothing]; underwear; neckties; winter gloves; scarves; stockings; headbands [clothing]; waterproof clothing; belts [clothing]; leather belts [clothing]; suspenders; bathing suits; footwear for sports; clothing for sports; outerclothing; children's clothing; overcoats (except wear for exclusive use for sports and Korean traditional dress); infants' clothing; shirts; sweaters; rain wear; ear muffs [clothing]; winter face masks (clothing); ski gloves; snowboarding gloves. |
| NICE CLASSIFICATION | 28 |
| GOODS AND SERVICES | Toys (playthings); dolls; toys; butterfly nets; toys for pets; ornaments for Christmas trees, except illumination articles and confectionery; fairground ride apparatus; games and playthings; sporting articles (other than golf articles/climbing articles); golf bags with or without wheels; golf gloves; golf balls; golf clubs; fishing tackle; twirling batons; portable games with liquid crystal displays. |
| NICE CLASSIFICATION | 41 |
| | Electronic publication of texts and printed matter, other than publicity texts, on the Internet; conducting of children field study for educational purposes; providing of photographic or video content via a website on the internet for educational purposes; providing electronic publications from a global computer network or the Internet, not downloadable; production of animated films; production of cartoons; distribution of |

| | |
|---|---|
| GOODS AND SERVICES | cartoons; production of animation programmes; game services provided on-line from a mobile phone network; arranging and conducting of mobile game competitions; planning and production of musicals; production and distribution of animation TV series; production and presentation and distribution of animated films; production of animations; providing entertainment and educational services at children's play schools; multimedia publishing of printed matter, books, magazines, journals, newspapers, newsletters, tutorials, maps, graphics, photographs, videos, music and electronic publications; providing on-line electronic publications, not downloadable; publishing of electronic publications; electronic publishing services; concert, musical and video performances; providing amusement arcade services; providing of gaming facilities; recreation facilities services; providing recreation facilities; organising of cultural events; children's adventure playground services; entertainment services. |

## PARIS PRIORITY DETAILS

| | |
|---|---|
| PARIS PRIORITY CODE: | Republic of Korea |
| PARIS PRIORITY APPLICATION NUMBER | 4020180182738 |
| PARIS PRIORITY APPLICATION DATE | 12/28/2018 |
| PRIORITY CLASSIFICATION (NICCLAI) | 41 |
| PRIORITY GOODS & SERVICES | |

## PARIS PRIORITY DETAILS

| | |
|---|---|
| PARIS PRIORITY CODE: | Republic of Korea |
| PARIS PRIORITY APPLICATION NUMBER | 7020180001444 |
| PARIS PRIORITY APPLICATION DATE | 12/28/2018 |
| PRIORITY CLASSIFICATION (NICCLAI) | 25 |
| PRIORITY GOODS & SERVICES | |

## PARIS PRIORITY DETAILS

| | |
|---|---|
| PARIS PRIORITY CODE: | Republic of Korea |
| PARIS PRIORITY APPLICATION NUMBER | 7020180001445 |
| PARIS PRIORITY APPLICATION DATE | 12/28/2018 |
| PRIORITY CLASSIFICATION (NICCLAI) | 09 |
| PRIORITY GOODS & SERVICES | |

## PARIS PRIORITY DETAILS

| | |
|---|---|
| PARIS PRIORITY CODE: | Republic of Korea |
| PARIS PRIORITY APPLICATION NUMBER | 7020180001446 |
| PARIS PRIORITY APPLICATION DATE | 12/28/2018 |
| PRIORITY CLASSIFICATION (NICCLAI) | 16 |
| PRIORITY GOODS & SERVICES | |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE APPLICATION NUMBER | 7020180001445 |
| BASE APPLICATION DATE | 12/28/2018 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE REGISTRATION NUMBER | 4012909140000 |
| BASE REGISTRATION DATE | 09/29/2017 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE APPLICATION NUMBER | 7020180001446 |
| BASE APPLICATION DATE | 12/28/2018 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE REGISTRATION NUMBER | 4012909150000 |
| BASE REGISTRATION DATE | 09/29/2017 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE APPLICATION NUMBER | 7020180001444 |
| BASE APPLICATION DATE | 12/28/2018 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE REGISTRATION NUMBER | 4014050280000 |
| BASE REGISTRATION DATE | 10/10/2018 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE REGISTRATION NUMBER | 4012909160000 |
| BASE REGISTRATION DATE | 09/29/2017 |

## BASE REGISTRATION DETAILS

| | |
|---|---|
| BASE APPLICATION NUMBER | 4020180182738 |
| BASE APPLICATION DATE | 12/28/2018 |

## REPRESENTATIVE DETAILS

| | |
|---|---|
| CLIENT IDENTIFIER | 980983 |
| NAME | WOO Jong Kyun |
| ADDRESS | Jeongdong Building, 17F, |
| | 21-15 Jeongdong-gil, |
| | Jung-gu |
| | Seoul 04518 |
| COUNTRY | Republic of Korea |

## INTENT TO USE GROUP

| | |
|---|---|
| CONTRACTING PARTY CODE | United States of America |

## DESIGNATIONS

| | |
|---|---|
| DESIGNATIONS UNDER THE PROTOCOL | United States of America |

## INTERNATIONAL REGISTRATION DETAILS

| | |
|---|---|
| INTERNATIONAL REGISTRATION NUMBER | 1452578 |
| INTERNATIONAL REGISTRATION DATE OF MARK | 01/02/2019 |
| INTERNATIONAL REGISTRATION EXPIRY DATE | 01/02/2029 |
| EFFECTIVE DATE OF MODIFICATION | 01/02/2019 |
| NOTIFICATION DATE | 02/28/2019 |
| DATE OF RECORDAL IN INTERNATIONAL REGISTER | 02/12/2019 |
| IB DOCUMENT ID | 1215300201 |
| OFFICE OF ORIGIN CODE | Republic of Korea |

| | |
|---|---|
| OFFICE REFERENCE | 79253035 |
| TRANSACTION TYPE VALUES | Initial Designation |
| ORIGINAL LANGUAGE | ENGLISH |
| INSTRUMENT UNDER WHICH CONTRACTING PARTY IS DESIGNATED | Protocol |
| DURATION OF MARK (YEARS) | 10 |

# Baby Shark

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

# Trademark/Service Mark Application, Principal Register

**Serial Number: 88046099**
**Filing Date: 07/20/2018**

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 88046099 |
| **MARK INFORMATION** | |
| *MARK | \\TICRS\EXPORT17\IMAGEOUT 17\880\460\88046099\xml1\ RFA0002.JPG |
| SPECIAL FORM | YES |
| USPTO-GENERATED IMAGE | NO |
| LITERAL ELEMENT | pinkfong Baby Shark |
| COLOR MARK | NO |
| *DESCRIPTION OF THE MARK (and Color Location, if applicable) | The mark consists of pinkfong Baby Shark. |
| PIXEL COUNT ACCEPTABLE | YES |
| PIXEL COUNT | 314 x 295 |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Smart Study Co., Ltd. |
| INTERNAL ADDRESS | (Seocho-dong, 5th Floor), |
| *STREET | 94, Myeongdal-ro, Seocho-gu |
| *CITY | Seoul |
| *COUNTRY | Korea, South |
| EMAIL ADDRESS | mailroom@bskb.com |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | limited company (ltd.) |
| STATE/COUNTRY WHERE LEGALLY ORGANIZED | Korea, South |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| INTERNATIONAL CLASS | 028 |
| *IDENTIFICATION | Playthings, namely, toy figures and playsets therefor; Dolls; Toys, namely, rubber character toys, plastic character toys, plush toys, wind-up toys, toy tools, toy building blocks; Butterfly nets; Toys for pets; Ornaments for Christmas trees, except illumination articles and confectionery; Fairground ride apparatus, namely, amusement park rides; Games and playthings, namely, toy action figures, toy vehicle playsets, board games, puzzles; Sporting articles other than golf and |

| | climbing articles, namely, tennis rackets, nets for sports, balls for sports, baseball bats; Golf bags with or without wheels; Golf gloves; Golf balls; Golf clubs; Fishing tackle; Twirling batons; Portable games with liquid crystal displays; Stuffed dolls |
|---|---|
| **FILING BASIS** | SECTION 1(b) |
| **FILING BASIS** | SECTION 44(d) |
| **FOREIGN APPLICATION NUMBER** | 4020180094182 |
| **FOREIGN APPLICATION COUNTRY** | Korea, South |
| **FOREIGN FILING DATE** | 07/10/2018 |
| **INTENT TO PERFECT 44(d)** | At this time, the applicant intends to rely on Section 44(e) as a basis for registration and requests that the application be suspended to await the submission of the foreign registration. If ultimately the applicant does not rely on §44(e) as a basis for registration, a valid claim of priority may be retained. |
| **ADDITIONAL STATEMENTS SECTION** | |
| **DISCLAIMER** | No claim is made to the exclusive right to use "SHARK" for the identified goods of "playthings, namely, toy figures," "dolls," and "toys, namely, rubber character toys, plastic character toys, plush toys" apart from the mark as shown. |
| **ATTORNEY INFORMATION** | |
| **NAME** | Robert J. Kenney |
| **ATTORNEY DOCKET NUMBER** | 0677-0116US1 |
| **FIRM NAME** | Birch, Stewart, Kolasch & Birch, LLP |
| **STREET** | 8110 Gatehouse Road, Suite 100 East |
| **CITY** | Falls Church |
| **STATE** | Virginia |
| **COUNTRY** | United States |
| **ZIP/POSTAL CODE** | 22042 |
| **PHONE** | 703-205-8000 |
| **FAX** | 703-205-8050 |
| **EMAIL ADDRESS** | mailroom@bskb.com |
| **AUTHORIZED TO COMMUNICATE VIA EMAIL** | Yes |
| **OTHER APPOINTED ATTORNEY** | James M. Slattery; Paul C. Lewis; Michael K. Mutter; Michael T. Smith; Lynde Herzbach; Charles Gorenstein |
| **DOMESTIC REPRESENTATIVE INFORMATION** | |
| **NAME** | Birch, Stewart, Kolasch & Birch, LLP |
| **STREET** | 8110 Gatehouse Road, Suite 100 East |
| **CITY** | Falls Church |
| **STATE** | Virginia |
| **COUNTRY** | United States |
| **ZIP CODE** | 22042 |

| PHONE | 703-205-8000 |
|---|---|
| FAX | 703-205-8050 |
| EMAIL ADDRESS | mailroom@bskb.com |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Robert J. Kenney |
| FIRM NAME | Birch, Stewart, Kolasch & Birch, LLP |
| STREET | 8110 Gatehouse Road, Suite 100 East |
| CITY | Falls Church |
| STATE | Virginia |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 22042 |
| PHONE | 703-205-8000 |
| FAX | 703-205-8050 |
| *EMAIL ADDRESS | mailroom@bskb.com |
| *AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS RF |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 275 |
| *TOTAL FEE DUE | 275 |
| *TOTAL FEE PAID | 275 |
| **SIGNATURE INFORMATION** | |
| SIGNATURE | /Robert J. Kenney/ |
| SIGNATORY'S NAME | Robert J. Kenney |
| SIGNATORY'S POSITION | Attorney of record, Virginia bar member |
| SIGNATORY'S PHONE NUMBER | 703-205-8000 |
| DATE SIGNED | 07/20/2018 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

**Serial Number: 88046099**
**Filing Date: 07/20/2018**

## To the Commissioner for Trademarks:

**MARK:** pinkfong Baby Shark (stylized and/or with design, see mark)

The literal element of the mark consists of pinkfong Baby Shark.
The applicant is not claiming color as a feature of the mark. The mark consists of pinkfong Baby Shark.
The applicant, Smart Study Co., Ltd., a limited company (ltd.) legally organized under the laws of Korea, South, having an address of
    (Seocho-dong, 5th Floor),
    94, Myeongdal-ro, Seocho-gu
    Seoul
    Korea, South
    mailroom@bskb.com (not authorized)

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

    International Class 028:  Playthings, namely, toy figures and playsets therefor; Dolls; Toys, namely, rubber character toys, plastic character toys, plush toys, wind-up toys, toy tools, toy building blocks; Butterfly nets; Toys for pets; Ornaments for Christmas trees, except illumination articles and confectionery; Fairground ride apparatus, namely, amusement park rides; Games and playthings, namely, toy action figures, toy vehicle playsets, board games, puzzles; Sporting articles other than golf and climbing articles, namely, tennis rackets, nets for sports, balls for sports, baseball bats; Golf bags with or without wheels; Golf gloves; Golf balls; Golf clubs; Fishing tackle; Twirling batons; Portable games with liquid crystal displays; Stuffed dolls
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

Priority based on foreign filing: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services and asserts a claim of priority based on Korea, South application number 4020180094182, filed 07/10/2018.
INTENT TO PERFECT 44(d) : At this time, the applicant intends to rely on Section 44(e) as a basis for registration and requests that the application be suspended to await the submission of the foreign registration. If ultimately the applicant does not rely on §44(e) as a basis for registration, a valid claim of priority may be retained.

**Disclaimer**
No claim is made to the exclusive right to use "SHARK" for the identified goods of "playthings, namely, toy figures," "dolls," and "toys, namely, rubber character toys, plastic character toys, plush toys" apart from the mark as shown.

The applicant's current Attorney Information:
    Robert J. Kenney and James M. Slattery; Paul C. Lewis; Michael K. Mutter; Michael T. Smith; Lynde Herzbach; Charles Gorenstein of Birch, Stewart, Kolasch & Birch, LLP    8110 Gatehouse Road, Suite 100 East
    Falls Church, Virginia 22042
    United States
    703-205-8000(phone)
    703-205-8050(fax)
    mailroom@bskb.com (authorized)
The attorney docket/reference number is 0677-0116US1.

The applicant hereby appoints Birch, Stewart, Kolasch & Birch, LLP
    8110 Gatehouse Road, Suite 100 East
    Falls Church Virginia 22042

United States
703-205-8000(phone)
703-205-8050(fax)
mailroom@bskb.com (not authorized)
as applicant's representative upon whom notice or process in the proceedings affecting the mark may be served.


The applicant's current Correspondence Information:

Robert J. Kenney

Birch, Stewart, Kolasch & Birch, LLP

8110 Gatehouse Road, Suite 100 East

Falls Church, Virginia 22042

703-205-8000(phone)

703-205-8050(fax)

mailroom@bskb.com (authorized)

**E-mail Authorization:** I authorize the USPTO to send e-mail correspondence concerning the application to the applicant, the applicant's attorney, or the applicant's domestic representative at the e-mail address provided in this application. I understand that a valid e-mail address must be maintained and that the applicant or the applicant's attorney must file the relevant subsequent application-related submissions via the Trademark Electronic Application System (TEAS). Failure to do so will result in the loss of TEAS Reduced Fee status and a requirement to submit an additional processing fee of $125 per international class of goods/services.

A fee payment in the amount of $275 has been submitted with the application, representing payment for 1 class(es).

<div align="center">

**Declaration**

</div>

☑ **Basis:**
  **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

  **And/Or**
  **If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Robert J. Kenney/   Date: 07/20/2018
Signatory's Name: Robert J. Kenney
Signatory's Position: Attorney of record, Virginia bar member
Payment Sale Number: 88046099
Payment Accounting Date: 07/20/2018

Serial Number: 88046099
Internet Transmission Date: Fri Jul 20 12:56:07 EDT 2018
TEAS Stamp: USPTO/BAS-XXX.XXX.XX.XX-2018072012560750
5469-88046099-6104be8eab3ee7813016e95854
a93a90312158818999efe7f3035efa6758e8dfa-
CC-12784-20180720121806146723

pinkfong Baby Shark

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

# Trademark/Service Mark Application, Principal Register

**Serial Number: 88396786**
**Filing Date: 04/22/2019**

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 88396786 |
| **MARK INFORMATION** | |
| *MARK | PINKFONG BABY SHARK |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | PINKFONG BABY SHARK |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Smart Study Co., Ltd. |
| **INTERNAL ADDRESS** | Seocho-dong, 5th Floor |
| *STREET | 94, Myeongdal-ro, Seocho-gu |
| *CITY | Seoul |
| *COUNTRY | Korea, South |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 06668 |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | limited company (ltd.) |
| **STATE/COUNTRY WHERE LEGALLY ORGANIZED** | Korea, South |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **INTERNATIONAL CLASS** | 025 |
| *IDENTIFICATION | Clothing and footwear, namely, athletic shoes, baby pants, belts, blouses, caps, coats, dresses, exercise suits, footwear, gloves, hats, jackets, jumpers, leggings, leotards, mittens, overalls, pants, polo shirts, sandals, shirts, shoes, shorts, skirts, sleepwear, slippers, sneakers, snowsuits, sport shirts, sweaters, sweatshirts, swimwear, t-shirts, tights, warm-up suits, baby bibs, not of paper; mufflers; socks; hats; money belts (clothing); hanbok (Korean traditional clothing); underwear; neckties; winter gloves; scarves; stockings; headbands (clothing); waterproof clothing; belts (clothing); leather belts (clothing); suspenders; bathing suits; footwear for sports; clothing for sports; outer clothing; children's clothing; overcoats (except wear for exclusive use for sports and Korean |

| | traditional dress); infants' clothing; shirts; rain wear; ear muffs (clothing); winter face masks (clothing); ski gloves; snowboarding gloves |
|---|---|
| FILING BASIS | SECTION 1(b) |

## ATTORNEY INFORMATION

| | |
|---|---|
| NAME | Jason M. Drangel |
| FIRM NAME | Epstein Drangel LLP |
| STREET | 60 E. 42nd Street, Suite 2520 |
| CITY | New York |
| STATE | New York |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 10165 |
| PHONE | 212-292-5390 |
| FAX | 212-292-5391 |
| EMAIL ADDRESS | mail@ipcounselors.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| OTHER APPOINTED ATTORNEY | Robert L. Epstein, William C. Wright, Ashly E.Sands, Kimberly A. Klibert, Kerry B. Brownlee, Annmary Ittan, Dwana S. Dixon, Brieanne Scully, Patrick Paul |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| NAME | Jason M. Drangel |
| FIRM NAME | Epstein Drangel LLP |
| STREET | 60 E. 42nd Street, Suite 2520 |
| CITY | New York |
| STATE | New York |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 10165 |
| PHONE | 212-292-5390 |
| FAX | 212-292-5391 |
| *EMAIL ADDRESS | mail@ipcounselors.com |
| *AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## FEE INFORMATION

| | |
|---|---|
| APPLICATION FILING OPTION | TEAS RF |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 275 |
| *TOTAL FEE DUE | 275 |
| *TOTAL FEE PAID | 275 |

## SIGNATURE INFORMATION

| | |
|---|---|
| SIGNATURE | /Jason M. Drangel/ |

| SIGNATORY'S NAME | Jason M. Drangel |
|---|---|
| SIGNATORY'S POSITION | Attorney of Record New York State |
| SIGNATORY'S PHONE NUMBER | 212-292-5390 |
| DATE SIGNED | 04/22/2019 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

**Serial Number: 88396786**
**Filing Date: 04/22/2019**

## To the Commissioner for Trademarks:

**MARK:** PINKFONG BABY SHARK (Standard Characters, see mark)
The literal element of the mark consists of PINKFONG BABY SHARK.
The mark consists of standard characters, without claim to any particular font style, size, or color.

The applicant, Smart Study Co., Ltd., a limited company (ltd.) legally organized under the laws of Korea, South, having an address of
   Seocho-dong, 5th Floor
   94, Myeongdal-ro, Seocho-gu
   Seoul 06668
   Korea, South

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

   International Class 025:  Clothing and footwear, namely, athletic shoes, baby pants, belts, blouses, caps, coats, dresses, exercise suits, footwear, gloves, hats, jackets, jumpers, leggings, leotards, mittens, overalls, pants, polo shirts, sandals, shirts, shoes, shorts, skirts, sleepwear, slippers, sneakers, snowsuits, sport shirts, sweaters, sweatshirts, swimwear, t-shirts, tights, warm-up suits, baby bibs, not of paper; mufflers; socks; hats; money belts (clothing); hanbok (Korean traditional clothing); underwear; neckties; winter gloves; scarves; stockings; headbands (clothing); waterproof clothing; belts (clothing); leather belts (clothing); suspenders; bathing suits; footwear for sports; clothing for sports; outer clothing; children's clothing; overcoats (except wear for exclusive use for sports and Korean traditional dress); infants' clothing; shirts; rain wear; ear muffs (clothing); winter face masks (clothing); ski gloves; snowboarding gloves
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

The applicant's current Attorney Information:
   Jason M. Drangel and Robert L. Epstein, William C. Wright, Ashly E.Sands, Kimberly A. Klibert, Kerry B. Brownlee, Annmary Ittan, Dwana S. Dixon, Brieanne Scully, Patrick Paul of Epstein Drangel LLP     60 E. 42nd Street, Suite 2520
   New York, New York 10165
   United States
   212-292-5390(phone)
   212-292-5391(fax)
   mail@ipcounselors.com (authorized)

The applicant's current Correspondence Information:
   Jason M. Drangel
   Epstein Drangel LLP
   60 E. 42nd Street, Suite 2520
   New York, New York 10165
   212-292-5390(phone)
   212-292-5391(fax)
   mail@ipcounselors.com (authorized)

**E-mail Authorization:** I authorize the USPTO to send e-mail correspondence concerning the application to the applicant, the applicant's attorney, or the applicant's domestic representative at the e-mail address provided in this application. I understand that a valid e-mail address must be maintained and that the applicant or the applicant's attorney must file the relevant subsequent application-related submissions via the Trademark Electronic Application System (TEAS). Failure to do so will result in the loss of TEAS Reduced Fee status and a requirement to submit an additional processing fee of $125 per international class of goods/services.

A fee payment in the amount of $275 has been submitted with the application, representing payment for 1 class(es).

## Declaration

☑ **Basis:**
**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Jason M. Drangel/   Date: 04/22/2019
Signatory's Name: Jason M. Drangel
Signatory's Position: Attorney of Record New York State
Payment Sale Number: 88396786
Payment Accounting Date: 04/23/2019

Serial Number: 88396786
Internet Transmission Date: Mon Apr 22 18:08:02 EDT 2019
TEAS Stamp: USPTO/BAS-XXX.XX.XX.XXX-2019042218080243
4458-88396786-6205d15bbaec8b7bc92a1e7a11
1c4144db64afc3fbc3913f2ca5e164e41289f9f-
CC-5342-20190422175504721640

# PINKFONG BABY SHARK

# EXHIBIT C

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn A. Tingle*

Acting United States Register of Copyrights and Director

**Registration Number**

## PA 2-142-905

**Effective Date of Registration:**
December 21, 2018

## Title
_____

**Title of Work:**  Baby Shark

## Completion/Publication
_____

**Year of Completion:**  2015
**Date of 1st Publication:**  November 25, 2015
**Nation of 1st Publication:**  United States

## Author
_____

- **Author:**  Smart Study Co., Ltd.
  **Author Created:**  production, direction, script/screenplay, cinematography, editing, audiovisual material
  **Work made for hire:**  Yes
  **Citizen of:**  Korea, South

- **Author:**  Ddondduya
  **Author Created:**  audiovisual material
  **Work made for hire:**  Yes
  **Citizen of:**  Korea, South

- **Author:**  Zooton
  **Author Created:**  cinematography, editing, Animation
  **Work made for hire:**  Yes
  **Citizen of:**  Korea, South

## Copyright Claimant
_____

**Copyright Claimant:**  Smart Study Co., Ltd.
5F, 94 Myeongdal-ro, Seocho-gu, Seoul, 06668, Korea, South
**Transfer statement:**  By written agreement

## Limitation of copyright claim
_____

**Material excluded from this claim:**  preexisting music



**Previous registration and year:** SR0000823609, 2018

**New material included in claim:** all other cinematographic material, All animation

## Rights and Permissions

**Organization Name:** Epstein Drangel LLP
**Name:** Jason M. Drangel
**Email:** mail@ipcounselors.com
**Telephone:** (212)292-5390
**Address:** 60 E. 42nd Street
Suite 2520
New York, NY 10165 United States

## Certification

**Name:** Dwana S. Dixon
**Date:** December 21, 2018

**Correspondence:** Yes



# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = Baby Shark
Search Results: Displaying 5 of 23 entries



Labeled View

***Baby Shark.***

| | |
|---|---|
| **Type of Work:** | Sound Recording and Music |
| **Registration Number / Date:** | SR0000823609 / 2018-11-07 |
| **Application Title:** | Baby Shark. |
| **Title:** | Baby Shark. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Smart Study Co., Ltd. Address: 5F, 94 Myeongdal-ro, Seocho-gu, Seoul, 06668, Korea, South. |
| **Date of Creation:** | 2015 |
| **Date of Publication:** | 2015-11-25 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Smart Study Co., Ltd., employer for hire; Citizenship: Korea, South. Authorship: sound recording, Lyrics and music. |
| **Pre-existing Material:** | preexisting music and sound recording. |
| **Basis of Claim:** | All other sound recording, lyrics and music. |
| **Rights and Permissions:** | Bin Jeong, Pinkfong USA, bin@pinkfong.com |
| **Copyright Note:** | C.O. correspondence. |
| **Names:** | Smart Study Co., Ltd. |



| Save, Print and Email (**Help Page**) | |
|---|---|
| Select Download Format | Full Record ▼   Format for Print/Save |
| Enter your email address: |        Email |

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kay A. Engle*

Acting United States Register of Copyrights and Director

**Registration Number**
## VA 2-130-847
**Effective Date of Registration:**
December 20, 2018

---

## Title

        **Title of Work:** Daddy Shark

## Completion/Publication

        **Year of Completion:** 2017
        **Date of 1st Publication:** September 15, 2017
        **Nation of 1st Publication:** Korea, South

## Author

    •    **Author:** Smart Study Co., Ltd.
        **Author Created:** sculpture
        **Work made for hire:** Yes
        **Citizen of:** Korea, South

## Copyright Claimant

        **Copyright Claimant:** Smart Study Co., Ltd.
        5F, 94 Myeongdal-ro, Seocho-gu, Seoul, 06668, Korea, South

## Rights and Permissions

        **Organization Name:** Epstein Drangel LLP
        **Name:** Jason M. Drangel
        **Email:** mail@ipcounselors.com
        **Telephone:** (212)292-5390
        **Address:** 60 E. 42nd Street
        Suite 2520
        New York, NY 10165 United States

## Certification

**Name:**   Dwana S. Dixon
**Date**:   December 20, 2018



# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Karyn A. Temple*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-130-854

**Effective Date of Registration:**
December 19, 2018

---

## Title

**Title of Work:** Mommy Shark

## Completion/Publication

**Year of Completion:** 2017
**Date of 1st Publication:** September 15, 2017
**Nation of 1st Publication:** Korea, South

## Author

- **Author:** Smart Study Co., Ltd.
  **Author Created:** sculpture
  **Work made for hire:** Yes
  **Citizen of:** Korea, South

## Copyright Claimant

**Copyright Claimant:** Smart Study Co., Ltd.
5F, 94 Myeongdal-ro, Seocho-gu, Seoul, 06668, Korea, South

## Rights and Permissions

**Organization Name:** Epstein Drangel LLP
**Name:** Jason M. Drangel
**Email:** mail@ipcounselors.com
**Telephone:** (212)292-5390
**Address:** 60 E. 42nd Street
Suite 2520
New York, NY 10165 United States

## Certification

**Name:** Dwana S. Dixon
**Date:** December 19, 2018

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

**Registration Number**

## VA 2-130-856

**Effective Date of Registration:**
December 19, 2018

*Kay A. Tegle*

Acting United States Register of Copyrights and Director

## Title

**Title of Work:**  Baby Shark

## Completion/Publication

**Year of Completion:**  2017
**Date of 1st Publication:**  September 15, 2017
**Nation of 1ˢᵗ Publication:**  Korea, South

## Author

- **Author:**  Smart Study Co., Ltd.
  **Author Created:**  sculpture
  **Work made for hire:**  Yes
  **Citizen of:**  Korea, South

## Copyright Claimant

**Copyright Claimant:**  Smart Study Co., Ltd.
5F, 94 Myeongdal-ro, Seocho-gu, Seoul, 06668, Korea, South

## Rights and Permissions

**Organization Name:**  Epstein Drangel LLP
**Name:**  Jason M. Drangel
**Email:**  mail@ipcounselors.com
**Telephone:**  (212)292-5390
**Address:**  60 E. 42nd Street
Suite 2520
New York, NY 10165 United States

## Certification

**Name:** Dwana S. Dixon
**Date**: December 19, 2018

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Karo A. Tengle*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-131-983

**Effective Date of Registration:**
December 28, 2018

---

## Title _____

**Title of Work:**  Pink Fong Mascot

## Completion/Publication _____

**Year of Completion:**  2017
**Date of 1st Publication:**  September 15, 2017
**Nation of 1st Publication:**  Korea, South

## Author _____

- **Author:**  Smart Study Co., Ltd.
**Author Created:**  sculpture
**Work made for hire:**  Yes
**Citizen of:**  Korea, South

## Copyright Claimant _____

**Copyright Claimant:**  Smart Study Co., Ltd.
5F, 94 Myeongdal-ro, Seocho-gu, Seoul, 06668, Korea, South

## Rights and Permissions _____

**Organization Name:**  Epstein Drangel LLP
**Name:**  Jason M. Drangel
**Email:**  mail@ipcounselors.com
**Telephone:**  (212)292-5390
**Address:**  60 E. 42nd Street
Suite 2520
New York, NY 10165 United States

## Certification _____

Page 1 of 2



**Name:**   Dwana S. Dixon
**Date**:   December 28, 2018